IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| **AMBERTON APARTMENTS JV** § § § **Plaintiff** § § **v.** § § § **ASI LLOYDS** AND § **IAS SERVICES GROUP, LLC,** A/K/A § **IAS CLAIM SERVICE** § § **Defendants** § | CIVIL ACTION NO. 5:20-CV-01065-JKP |

## PLAINTIFF'S SECOND AMENDED COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

Subject to its motion to remand, Plaintiff, Amberton Apartments JV, files this second amended complaint complaining of Defendants, ASI Lloyds and IAS Services Group, LLC, a/k/a IAS Claim Service., in which Plaintiff seeks monetary relief of more than $1,000,000. Plaintiff will show this honorable Court as follows:

### Parties, Venue, and Discovery Level

1. Plaintiff, Amberton Apartments JV (hereinafter "Amberton"), is a Texas business entity and the named insured for the apartment complex located at 6000 Randolph Boulevard, San Antonio, Texas 78233.

2. Defendant, ASI Lloyds (hereinafter "ASI"), is a Lloyds company doing business in Texas that has already answered and appeared in this case.

3. Defendant, IAS Services Group, LLC, also known as IAS Claim Services (hereinafter "IAS Claim"), is a Texas limited liability company that has already answered and appeared in this case.

**Agency and Respondeat Superior**

4. Whenever in this petition it is alleged that the Defendants did any act or thing, it is meant that Defendants or their agents, officers, servants, employees, or representatives did such act or thing. They were also done with the full authorization or ratification of Defendants or done in the normal routine, course and scope of the agency or employment of Defendants or its agents, officers, servants, employees, or representatives.

**Conditions Precedent**

5. All conditions precedent to recovery have occurred or been performed.

**Facts of the Case**

6. Amberton purchased commercial property insurance from ASI (Policy Number TCP1186) to cover property losses to its apartment complex for the policy coverage period of March 21, 2016 to March 31, 2017. On or about April 12, 2016, during the subject policy period, a major wind and hail storm caused substantial damage to the Amberton Apartments located at 6000 Randolph Blvd., San Antonio, Texas 78223. Amberton thereafter reported this loss to ASI and its agents, who assigned this loss the claim number of 570850-184430. ASI hired an independent adjuster, Jeffrey Tarwater of IAS Claim, to inspect the loss and adjust the claim for ASI.

7. Amberton retained the services of a Texas licensed public insurance adjuster, Jason Lanier of J A Lanier & Associates, Inc. (hereinafter "Lanier"), to assist with its storm damage insurance claim. Lainer inspected the Amberton Apartments and assessed the damage to those apartments from the subject storm. Lainer recommended the replacement of the laminated roof shingles; the painting of various

parts of the apartment buildings; the replacement of the continuous ridge vents, counterflashing aprons, and downspouts of the apartments; and various other items of work necessary for the proper repair of the storm damage to the apartments. Lanier determined the total cost to properly repair this storm damage from the April 12, 2016 storm was $1,570,117.46, which included, without limitation, the replacement of all the roofs of the Amberton Apartments.

8. Amberton also retained the services of an experienced loss consultant, Gary Treider of Chaparral Consulting and Forensics to investigate and report on the storm damage to Amberton's Apartments. Treider first inspected to the storm damage to the Amberton Apartments on April 12, 2018. On July 23, 2018, Treider inspected the apartment complex again with Lanier and the adjuster from IAS Claim. During this inspection, Treider confirmed that the roofing shingles had been properly sealed down when they were installed. He also observed numerous shingles with detached seal tabs and damage throughout the middle of the roofs' slopes. This damage was not primarily to the corners or leading edges.

9. Treider documented these findings in his January 6, 2019 report. In this report, Treider concluded that the April 12, 2016 storm had damaged the subject roofs. More specifically, Treider determined that significant buffeting winds from the April 12, 2016 storm had de-bonded the seal strips on the roofing shingles. When the shingles were uplifted or unsealed by the winds (de-bonded), additional damage was caused to the overlying and underlying shingle mats. The buffeting winds of the storm also caused the shingles mates to be pulled over the nails fasteners leaving holes in the mats. To properly repair this storm damage, Treider recommended that the damages to the

shingle mats required replacement of the involved shingles (typically at a ratio of 5 to 1). These repairs, however, would end up costing more in such spot repairs than it would to just replace the roofs.

10. On or about July 23, 2018, ASI had IAS Claim inspect the Amberton Apartments and to assess the damage from the April 12, 2016 storm with Treider. During this inspection, Treider used a leaf blower to show Jeffery Tarwater of IAS Claim the extent of the uplifted and unsealed roofing shingles at the Amberton Apartments.

11. Even though Tarwater had observed the extensive wind damage to the roofs of the Amberton Apartments from the April 12, 2016 storm at the July 23, 2018 inspection, he did not immediately prepare an estimate or make a claims decision. As an experienced adjuster, Tarwater had more than sufficient information to estimate and pay the storm damage to the Amberton Apartments, but instead John Birge of ASI choose to retain the services of an engineer, Stewart Verhulst of Nelson Forensics, LLC, to evaluate the exteriors and roofs of Amberton Apartments concerning any damage from the April 12, 2016 storm. Amberton believes that ASI and ASI Claim hire engineers like Verhulst because they are biased for insurers and will provide ASI and ASI Claim with result-oriented reports on which they can deny or underpay an insured's storm damage insurance claim.

12. Verhulst inspected the Amberton Apartments on November 12 and 13, 2018. During the November 13 inspection, Plaintiff's public insurance adjuster, Jason Lanier, showed Verhulst the use of the leaf blower tests to reveal uplifted and unsealed roofing shingles.

13. True to form, in a December 27, 2018 report, Verhulst erroneously determined that the overall pattern of shingle distress was not consistent with wind forces from a specific wind event. The report also disputed Treider's findings of wind damage to the field of the roofs of the Amberton Apartments and erroneously attributed the uplifted and unsealed shingle damage to installation defects like over-driven, missing, and misplaced nails concerning the roofing shingles. In this respect, Nelson misrepresented the wind damage to the roofs of the Amberton Apartments. More specifically, Verhulst made the following misrepresentations in its report:

> "Shingle unadherance does not necessarily indicate that the unadherance is related to wind forces. Other factors can affect shingle adherence, including poor initial adherence and poor shingle installation."

> "Additionally, the pattern of the shingle distress observed, including the variability of the shingle unadherence from building to building and across the site is consistent with variability of shingle installation rather than a patter related vaiabilities in wind loading from a specific wind event."

These misrepresentations were crucial to ASI and IAS Claim in low-balling Plaintiff's storm damage insurance claim. In its report, Verhulst also misrepresented that the leaf blower test caused some lifting of bonded shingles.

14. As an experienced adjuster, Tarwater of IAS Claim should have known that Verhulst had misrepresented the storm damage to the roofs of the Amberton Apartments especially since he had thoroughly inspected the roofs and witnessed Trieder doing his leaf blower tests revealing the numerous uplifted and unsealed shingles on the roofs. Nevertheless, he blindly relied on Verhulst's report to misrepresent and minimize the extent of the wind damage, and low-ball his June 19, 2019 damage estimate for the storm damage to the Amberton Apartments from the subject storm.

15. Tarwater of IAS Claim determined in his June 14, 2019 estimate that even though all 45 buildings of the Amberton Apartments had sustained some damage, the total cost to repair this storm damage from the April 12, 2016 storm was only $95,896.73. In this respect, IAS Claim misrepresented the storm damage to the Amberton Apartments and failed to conduct an adequate or reasonable inspection and investigation of this storm damage. IAS Claim overlooked and ignored significant storm damage to the Amberton Apartments and intentionally created a low-ball estimate so ASI could underpay the claim.

16. IAS Claim knew that ASI was going to rely on its inspection, investigation, and estimate in making a claim determination. In addition, IAS Claim and ASI strung Plaintiff out since they should have made their claim decision soon after receiving Verhulst's December 27, 2018 report. Instead, IAS Claim waited almost six months before preparing its storm damage estimate and ASI waited almost eight months before making its claim decision. In doing so, these Defendants failed within a reasonable time to affirm or deny coverage of a claim to a policyholder in violation of Section 541.060 of the Texas Insurance Code. In addition to IAS Claim's misrepresentation in the damage estimate, ASI also violated Section 541.060 by misrepresenting to a claimant material facts relating to the coverage at issue in its denial letter (by underestimating the damage and the actual amount of the covered policy benefits) and by refusing to pay a claim without conducting a reasonable investigation. By this conduct, Defendants have further violated Section 541.060 in not attempting in good faith to effectuate a prompt, fair, and equitable settlement of Plaintiff's claim on which Defendants' liability has become reasonably clear.

17. In early July of 2019, Lanier contacted Defendants about their delay in making a claims decision. In a July 5, 2019 letter, ASI told Lanier that the reports were under review and that "We will follow up with you once the final report has been reviewed." In doing so, ASI failed to explain its delay especially since it had Verhulst's report since December 28, 2018 and misrepresented the status of the claim. In a July 8, 2019 email, Lanier also requested that ASI send him a copy of Verhulst's report.

18. In an August 1, 2019 letter, Lanier informed ASI that even though all field inspections had been completed before the end of October 2018, ASI had not made a claim decision in over nine months. As a result of this unreasonable delay, Amberton elected to submit its own proof of loss to ASI even though ASI had waived any such proof of loss due to its failure to timely request one. On August 1, 2019, Lanier submitted a partial sworn statement in proof of loss from Amberton to ASI for hail and windstorm damage to the Amberton Apartments as a result of the subject storm in the amount of $1,570,117.46, less depreciation of $135.063.24, and the policy's deductible of $25,000, for a net claim of $1,410,054.22. This demand and proof of loss was based on Lanier's estimate for the storm damage to the Amberton Apartments from the April 12, 2016 wind and hail storm, which Lanier also sent to ASI. The proof of loss lulled ASI out of its unreasonable delay and ASI thereafter provided Lanier and Amberton with Verhulst's report and a claims decision.

19. In an August 14, 2019 letter, which ASI emailed to Lanier on August 22, 2019, ASI rejected Amberton's proof of loss. ASI also informed Amberton that it was only providing coverage based on Verhulst's report and IAS Claim's estimate and that this coverage was limited by some inapplicable policy exclusions. In this letter, ASI

misrepresented that the subject storm had only caused damages of $95,896.73 to the Amberton Apartments. ASI then applied depreciation of $17,312.75 and Amberton's policy deductible of $25,000, for an actual cash value amount of $53,583.98.

20. In this letter to Lanier, ASI unbelievably stated: "Our goal is to continue to provide your client with a prompt and accurate conclusion to your claim." In addition to this misrepresentation, ASI determined and misrepresented that Amberton's roofs only need spot repairs to repair the subject storm damage. In this respect, the letter adopted Verhulst's misrepresentation and further misrepresented that "damage to shingle seal, unadherence and fasterner pull-through issues are not resulting from a specific high wind or hail event rather a combination of install issues, general shingle wear, tear and age related conditions which are not covered under the policy." In doing so, ASI violated Sections 541.060 and 541.061 of the Texas Insurance Code by misrepresenting the effect of a policy provision to Plaintiff and by also making a material misrepresentation of law. In this respect, even if a roof is not properly installed, if an insurer insurers it and then that roof suffers storm damage, the storm damage is fully covered despite any inproper installation.

21. ASI then issued a payment of $53,583.98 to Amberton. To date, ASI has failed and refused to pay Amberton the replacement cost amount of $1,570,117.46 (less the policy deductible and any previous payments) for the proper repair of the storm damage to the Amberton Apartments.

**Cause of Action for Breach of Contract**

22. The preceding paragraphs are incorporated herein for this cause of action. According to the insurance policy that Plaintiff purchased, ASI had the duty to

investigate and pay Plaintiff policy benefits for claims made for damages caused by the April 12, 2016 hail and wind storm to the Amberton Apartments. Plaintiff fully performed under its policy with ASI and paid the required premiums. As a result of the storm, Plaintiff's property has sustained extensive damage, which is covered under Plaintiff's insurance policy with ASI. ASI has breached this contractual obligation and the subject insurance policy by failing to timely and properly pay Plaintiff sufficient policy benefits for the cost to properly repair the storm damage to the Amberton Apartments. ASI has also breached any contractual provisions on timely investigating, adjusting, and paying Plaintiff's insurance claim. As a result of these breaches of contract, Plaintiff has suffered the damages that are described in this complaint.

### Causes of Action for Violation of Chapter 542 of the Insurance Code

23. The preceding paragraphs are incorporated herein for this cause of action. ASI's and its adjusters' conduct that is described in this complaint violate Chapter 542 of the Texas Insurance Code. Within 15 days after the receipt of either actual or written notice of Plaintiff's windstorm claim, ASI did not request from Plaintiffs any items, statements, and forms that it reasonably believed at that time would be required from Plaintiff for this damage and loss.  As a result, ASI has violated Chapter 542 by failing to accept or reject Plaintiff's claim in writing within 36 days after receiving either actual or written notice of its claim. ASI has also violated Section 542.058 by failing to properly pay Plaintiff's claim within 75 days after it received either actual or written notice of the claim or within 60 days after any other applicable statutory period. For these violations, ASI owes Plaintiff the 18% per annum interest as damages for its failure to timely pay the amounts that it did pay and for any unpaid amount under Section 542.060 of the

Texas Insurance Code plus reasonable attorney's fees, prejudgment interests and court costs. In the event it is determined that ASI owes Plaintiff any additional monies, then ASI has automatically violated Chapter 542 of the Texas Insurance Code.

## **DTPA Causes of Action**

24. Plaintiff incorporates all the allegations in this complaint for these causes of action against Defendants ASI and IAS Claim under the provisions of the DTPA. Plaintiff is a consumer under the DTPA and has met all conditions precedent to bringing these causes of action against Defendants ASI and IAS Claim. Specifically, the violations of the DTPA include, without limitation, the following matters:

A. By their acts, omissions, failures, and conduct that are described in this complaint, Defendants ASI and IAS Claim have violated Sections 17.46(b)(5), (7), (12), and (20) of the DTPA. In this respect, Defendants' violations include, without limitation, (1) ASI and IAS Claim unreasonable delays in the investigation, adjustment, and resolution of Plaintiff's claim; (2) ASI and IAS Claim failure to properly investigate Plaintiff's claim; (3) their hiring of and reliance upon biased adjusters and consultants to obtain favorable, result-oriented reports and estimates to assist Defendants in low-balling Plaintiff's insurance claim; (4) their failure to pay for the proper repair of Plaintiff's property after their liability become reasonably clear; and (5) Defendants' misrepresentations that are described in this complaint.

B. As described in this complaint, Defendants ASI and IAS Claim represented to Plaintiff that the subject insurance policy and Defendants' adjusting and investigative services had characteristics or benefits that they did not have, which gives Plaintiff the right to recover under Section 17.46(b)(5) of the DTPA;

C. As described in this complaint, Defendants ASI and IAS Claim represented to Plaintiff that the subject insurance policy and Defendants' adjusting and investigative services were of a particular standard, quality, or grade when they were of another in violation of Section 17.46(b)(7) of the DTPA;

D. As described in this complaint, Defendants ASI and IAS Claim represented to Plaintiffs that the subject insurance policy and Defendants' adjusting and investigative services conferred or involved rights, remedies, or obligations that they did not have, which gives Plaintiff the right to recover under Section 17.46 (b)(12) of the DTPA;

E. By representing that Defendants would pay to repair the damages caused by the storm and then not doing so, Defendants have violated Sections 17.46(b)(5), (7), and (12) of the DTPA;

F. Defendants have breached an express warranty that the damage caused by the windstorm and hail would be covered under the subject insurance policy. This breach by ASI and IAS Claim entitles Plaintiff to recover under Sections 17.46(b)(12) and (20) and 17.50(a)(2) of the DTPA;

G. Defendants' actions and conduct, as described in this complaint, are unconscionable in that they took advantage of Plaintiff's lack of knowledge, ability, and experience to a grossly unfair degree. ASI's and IAS Claim's unconscionable conduct gives Plaintiff the right to relief under Section 17.50(a)(3) of the DTPA; and

H. ASI's and IAS Claim's conduct, acts, omissions, and failures, as described in this complaint, are unfair practices in the business of insurance in violation of Section 17.50(a)(4) of the DTPA.

All of the above-described acts, omissions, and failures of Defendants ASI and IAS Claims are a producing cause of Plaintiff's damages that are described in this complaint.

### Causes of Action for Unfair Insurance Practices

25. Plaintiff incorporates all the allegations in this complaint for these causes of action against Defendants ASI and IAS Claim under the Texas Insurance Code. Plaintiff has satisfied all conditions precedent to bringing these causes of action. By their acts, omissions, failures, and conduct, Defendants ASI and IAS Claim have engaged in unfair and deceptive acts or practices in the business of insurance in violation of Chapter 541 of the Texas Insurance Code. Such violations include, without limitation, all the conduct described in this complaint plus ASI and IAS Claim failure to properly and reasonably investigate Plaintiff's claim and Defendants' failure within a reasonable time to affirm or deny coverage of Plaintiff's claim. They also include ASI's and IAS Claim's

unreasonable delays in the investigation, adjustment, and resolution of Plaintiff's claim and their failure to pay for the proper repair of Plaintiff's property on which Defendants' liability had become reasonably clear. They further include Defendants' hiring of and reliance upon biased adjusters and consultants to obtain favorable, result-oriented reports and estimates to assist them in low-balling Plaintiff's insurance claim. In addition, Defendants made the misrepresentations that are described in this complaint in violation of Sections 541.060 and 541.061 of the Texas Insurance Code as previously described in this complaint. Finally, Defendants failed to look for coverage and give Plaintiff the benefit of the doubt. Specifically, ASI and IAS Claim are guilty of the following unfair insurance practices:

    A. Engaging in false, misleading, and deceptive acts or practices in the business of insurance in this case;

    B. Engaging in unfair claims settlement practices;

    C. Misrepresenting to Plaintiffs pertinent facts or policy provisions relating to the coverage at issue;

    D. Not attempting in good faith to effectuate a prompt, fair, and equitable settlement of Plaintiff's claim on which Defendants' liability has become reasonably clear;

    E. Failing to affirm or deny coverage of Plaintiff's claim within a reasonable time; and

    F. Refusing to properly pay Plaintiff's claim without conducting a reasonable investigation with respect to the claim and by conducting a sham investigation that ignored and excluded damage form the subject storm.

ASI has also breached section 541.061 of the Texas Insurance Code as previously described in this complaint. ASI further breached the Texas Insurance Code when it breached its duty of good faith and fair dealing. Defendants' conduct as described herein has resulted in Plaintiff's damages that are described in this complaint.

### Cause of Action for Breach of Duty of Good Faith and Fair Dealing

26. Plaintiff incorporates all the allegations of the preceding paragraphs for this cause of action. By its acts, omissions, failures, and conduct, ASI has breached its common law duty of good faith and fair dealing by lowballing and partially denying Plaintiff's claim without any reasonable basis and by failing to conduct a reasonable investigation to determine whether there was a reasonable basis for its denial. ASI has also breached its duty by unreasonably delaying payment of Plaintiff's claim and by failing to settle Plaintiff's total claim because they knew or should have known that it was reasonably clear that the entire claim was covered. ASI's acts, omissions, failures, and conduct have proximately caused Plaintiff's damages.

### Waiver and Estoppel

27. Defendants ASI and IAS Claim have waived and are estopped from asserting any defenses, conditions, exclusions, or exceptions to coverage not contained in any reservation of rights or denial letters previously sent to Plaintiff.

### Damages

28. Plaintiff incorporates all the allegations of the preceding paragraphs for these damage claims. The above described acts, omissions, failures, and conduct of Defendants have caused Plaintiff's damages that include, without limitation, the unpaid reasonable and necessary cost to properly repair the storm damage to Plaintiff's property from the April 12, 2016 storm in the amount of $1,570,117.46 (less the policy deductible and any previous payments), the cost of any temporary repairs, and any investigative and engineering fees incurred during the claims process. Plaintiff is also entitled to recover the amount of its claim plus the eighteen percent per annum interest

on the amounts ASI untimely paid and those amounts it still owes as damages under Section 542.060 of the Texas Insurance Code. All the damages described in this petition are within the jurisdictional limits of this court.

### Additional Damages

29. Plaintiff incorporates all the allegations of the preceding paragraphs for these damage claims. Defendants ASI and IAS Claim have also "knowingly" and "intentionally" committed deceptive trade practices and unfair insurance practices as those terms are defined in the applicable statutes. As a result, Plaintiff is entitled to additional damages under Section 17.50(b)(1) of the DTPA and Chapter 541 of the Texas Insurance Code.

### Exemplary Damages

30. Plaintiff incorporates all the allegations of the preceding paragraphs for these damage claims. ASI's breach of its duty of good faith and fair dealing owed to Plaintiff was done intentionally and with "malice" and "gross negligence" as those terms are defined in Chapter 41 of the Texas Civil Practice and Remedies Code. These violations by ASI are the type of conduct that the State of Texas protects its citizens against by the imposition of exemplary damages. Therefore, Plaintiff seeks the recovery of exemplary damages in an amount to be determined by the finder of fact that is sufficient to punish ASI for its wrongful conduct and to set an example to deter this Defendant and others similarly situated from committing similar acts in the future.

### Attorney's Fees

31. As a result of Defendants' conduct that is described in this petition, Plaintiff has been forced to retain the undersigned attorneys to prosecute this action and have

agreed to pay reasonable attorney's fees. Plaintiff is entitled to recover these attorney's fees under Chapter 38 of the Texas Civil Practices and Remedies Code; Chapters 541 and 542 of the Texas Insurance Code; and Section 17.50 of the DTPA.

WHEREFORE, PREMISES CONSIDERED, having previously requested a jury trial, Plaintiff requests that on the final hearing in this case, the court award Plaintiff a judgment against Defendants for the following:

1. Actual damages, economic, additional, and exemplary damages in an amount within the jurisdictional limits of the court, as described herein;
2. Reasonable attorney's fees through trial and on appeal;
3. Eighteen percent per annum interest on any late payments and the unpaid policy benefits pursuant to Chapter 542 of Texas Insurance Code.
4. Pre-judgment and post-judgment interest as provided by law;
5. Costs of court; and
6. Such other and further relief to which Plaintiff may be justly entitled.

Respectfully submitted,

***Loree & Lipscomb***
The Terrace at Concord Park
777 E. Sonterra Blvd, Suite 320
San Antonio, Texas 78258
Telephone: (210) 404-1320
Facsimile:  (210) 404-1310


By: */s/ Robert w. Loree*
Robert W. Loree
State Bar No. 12579200
rob@lhlawfirm.com
Cassandra Pruski
State Bar No. 24083690
cassie@lhllawfirm.com

Attorneys for Plaintiff

### CERTIFICATE OF SERVICE

I certify that Plaintiff has served a true and correct copy of the foregoing complcaint on October 30, 2020 to all counsel of record through the Court's ECF filing system:

/s/Robert W. Loree
Robert W. Loree